**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 23cr10186-ADB** |
| | ) | |
| **JOAN AVALO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SENTENCING MEMORANDUM**

Defendant Joan Avalo is a violent member of the Heath Street Gang who committed highly dangerous crimes in both Massachusetts and Maine. In this regard, Defendant facilitated a gang-related murder in the Mission Hill area of Boston in June 2021 in which a 16-year-old gang associate shot and killed an innocent person. Defendant, and his co-conspirator Keonte Campbell, were get-away drivers for the young killer who was driven out of Boston shortly after the murder to another location. The Heath Street Gang thereafter bragged about the murder in various public rap videos. Defendant was arrested on later charges and found to be in possession of potential witness names as to the murder, which were stored on Defendant's phone – consistent with potentially targeting these new victims in conjunction with the murder.

In addition to the murder, Defendant led a fentanyl trafficking ring that distributed the deadly drug to abusers throughout Maine. Defendant's actions presented a significant public health danger to citizens in Maine for which Defendant had no concern. In this regard, at one point, Defendant was told that two people who used his fentanyl had suffered life-threatening overdoses, and Defendant's only response was to seek more clients for his fentanyl.

There can be no dispute that Defendant's criminal activities put the public at risk in a myriad of ways – from violence on the street to the awful toll of opioid abuse. Avalo had no concern whatsoever about destroying neighborhoods and people from Boston to Maine. In particular, Avalo and the other members of the Heath Street Gang degraded the living conditions of the Mildred C. Hailey Apartments through drug trafficking and the specter of ongoing gang violence - not only from the Heath Street Gang but also its rivals targeting the area of the Mildred C. Hailey Apartments for retaliatory violence.

Given the circumstances of this case (especially the murder in which Defendant was involved), the Government recommends a sentence of 180 months' incarceration (which is *below* the low-end of the Sentencing Guidelines range) to be followed by 3 years of supervised release, no fine and a $100 mandatory special assessment. As one of the terms of his supervised release, the Government requests that Defendant be barred from entering or staying at the Mildred C. Hailey Apartments. The Government's recommended sentence aligns with the factors set forth in 18 U.S.C. § 3553. In particular, the sentence is necessary to protect the public and to deter both Defendant and others from similar criminal conduct in the future.

**THE SENTENCING GUIDELINES**

"'Relevant conduct in a RICO case' for purposes of § 1B1.3 of the Guidelines 'includes all conduct reasonably foreseeable to the particular defendant in furtherance of the RICO enterprise to which he belongs.'" United States v. Sandoval, 6 F.4th 63, 105 (1st Cir. 2021) (citations omitted). "The District Court must find such relevant conduct by a preponderance of the evidence." Id. "Any such conduct becomes a 'cross reference' that may be used to set the offense level." Id. Defendant's applicable Sentencing Guidelines are set by the juvenile Heath

Street Gang associate's cold-blooded murder of a person simply walking in the Mission Hill area in June 2021 in which Defendant was a co-conspirator. Defendant is subject to an adjusted offense level 40. Defendant is CHC III. After acceptance, Defendant's incarceration range is 360-480 months pursuant the PSR's calculations. See PSR at p.47. The low-end of the advisory Sentencing Guidelines is 30 years.[1]

**DEFENDANT'S CRIMINAL CONDUCT**

The Heath Street Gang originated in what is now the Mildred C. Hailey Apartments, a housing development in the Jamaica Plain section of Boston. The gang's criminal activities have had a particularly negative impact on the members of the public living (including families) living in housing development through the gang's violence (including violent/threatening conduct on site at the development as well as retaliatory attacks/shootings from rival street gangs targeting the housing development), drug dealing (in the housing development and in the nearby area), and the active recruitment of children from the housing development into the gang. The Heath Street Gang's activities have also severely impacted other areas of Boston, as well as surrounding communities. As a prime example, the Heath Street Gang has been involved in a long-standing conflict with the Mission Hill Gang which has resulted in Heath Street Gang members/associates committed numerous murders/shootings in the Mission Hill area, including public housing developments. Defendant was personally involved in one of these murders as discussed in the PSR and below.

[1] These calculations are unaffected by Defendant's extensive drug trafficking. As noted in the PSR, the Adjusted Offense Level for the drug charge is 32, which drops to 29 with acceptance of responsibility. Thus, under the drug Guidelines alone, Defendant faces 108 to 135 months.

Defendant is presently 29 years old. His criminal history began at the age of 13 and includes both violence and illegal firearms. See PSR at ¶¶ 126-134. The primary criminal actions driving Defendant's sentencing in this case are the gang-related murder conspiracy and the fentanyl trafficking conspiracy. However, those are not all the crimes that have been committed by Defendant pursuant to his gang membership. For example, in electronic communications seized from his phone, Defendant approved the robbery of a male victim on or about October 7, 2021. In the communications, an associate of Defendant asked Defendant permission to rob the individual. Defendant subsequently communicated: "Haunt that shit down right lol" – referring to targeting the victim. The associate asked: "So if I see him can I do it?" Defendant replied: "I don't care gang he ain't gang." Defendant then told his associate, if another individual was together with the target, both individuals should be robbed: "I'm saying if they together might as well rob em both."

## I. The Boston Murder Conspiracy

As noted in the PSR, Probation has found that Defendant was responsible for the murder on June 7, 2021, which was committed by a 16-year-old Heath Street Gang associate. Defendant argues that there is not sufficient evidence to hold him liable for being a member of the murder conspiracy. This argument fails under the preponderance standard.

Pursuant to earlier proceedings, the Court has been provided with a video recording of Defendant and co-defendant Keonte Campbell arriving in a car driven by Campbell and meeting with the juvenile shooter on June 7, 2021.[2] The recording is from a security camera in the

[2] These exhibits have previously been submitted to the Court during the appeal of Defendant's detention order.

Mildred C. Hailey Apartments in Boston – the home base of the Heath Street Gang.

At his detention appeal hearing, Defendant did not dispute: (1) the June 7, 2021, murder occurred in the Mission Hill area of Boston – the territory of the Mission Hill Gang, one of the Heath Street Gang's primary rivals; (2) the juvenile shooter has been charged with the murder in the Massachusetts state courts; (3) Defendant was the passenger in the vehicle along with Keonte Campbell; and (4) the juvenile shooter got into the vehicle with Defendant and Campbell after the shooting murder and left the area. They subsequently drove to a residence in Quincy, MA, used by another Heath Street Gang member.

The facts establish that Defendant and Campbell were involved in the murder conspiracy by facilitating the shooter's flight as follows:

1. The vehicle with Defendant and Campbell backed in and parked facing outwards in the parking lot at approximately 8:37 p.m., which was *approximately 4 minutes before the shooting occurred* (the shooting occurred, per Shot Spotter, at approximately 8:41 p.m.);

2. Defendant and Campbell stayed in the front seat vehicle and did not interact with anyone else;

3. The vehicle was kept running the entire time the vehicle was in the lot;

4. The vehicle's headlights were on the entire time the vehicle was in the lot;

5. Campbell can be seen with a cellular phone in his hand before the arrival of the shooter;

6. At approximately 8:54 p.m., around 12 minutes after the shooting, the shooter was recorded walking towards the parking lot;

7. *Within approximately 10 seconds of the shooter reaching the parking lot, Campbell turned on the interior dome light of the vehicle thus illuminating the passenger compartment of the vehicle* – this act is consistent with Campbell highlighting the vehicle so that the shooter could identify it in the lot at night;

8. The shooter was thereafter recorded on security footage walking along the perimeter of the parking lot looking at his phone;

9. While looking at his phone, the shooter walked past the vehicle with Defendant and Campbell, and then walked along the side of the parking lot away from the vehicle;

10. After walking the length of the lot, the shooter turned around 180 degrees and walked back to the area of Defendant and Campbell – again looking at his phone and looking at the illuminated vehicle;

11. The shooter approached the vehicle with Defendant and Campbell and stood next to the driver's side for approximately one minute before getting into the back seat of the vehicle;

12. During this time period between arriving and getting into the vehicle, the shooter received a text message with the home address of a Heath Street Gang member who was living in Quincy;

13. The vehicle, with all three individuals, pulled out and began to leave the parking lot before stopped in front of Defendant's vehicle, which was parked in the same lot. Defendant got out of Campbell's vehicle carrying a whitish object;

14. Defendant accessed his car and then spent approximately a minute in the passenger compartment of his car (a time period consistent with concealing something in his car) before returning to Campbell's vehicle; and

15. The vehicle then drove out of the lot.

These facts support that Defendant and Campbell were involved in a murder conspiracy by acting as the getaway drivers for the shooter's flight from Boston following the gang-related murder in Mission Hill territory.

Along these lines, investigators recovered notes from a phone used by Defendant, which were dated on or about July 26, 2021 – the month after the murder. These notes included three addresses which investigators have tied to individuals who could have been witnesses to aspects of the murder or had information about the murder. There is no viable reason for Defendant to have these addresses tied to possible witnesses except for intimidation or obstruction purposes.

At the hearing, Defendant presented no argument as to why he possessed the address information.

Also, as noted at the hearing, the murderer was arrested on state charges on or about December 11, 2023, pursuant to a state investigation of the murder. Three days later, Defendant spoke to the shooter in a recorded jail call and made comments consistent with discussing potential witness intimidation and obstruction of justice.

## II. The Maine Fentanyl Ring

Defendant was involved in significant fentanyl trafficking in Maine in 2021. Defendant supplied street dealers in Maine with fentanyl and the conspiracy involved well over 400 grams of fentanyl being distributed in a period of approximately four months.

During this period, Defendant was ripped off by a woman for 30 grams of fentanyl and thereafter sought to recover his losses through threats of violence against the alleged thief and her daughter. These threats were confirmed through electronic messages from Defendant's phone – these messages have previously been submitted to the Court during detention appeal proceedings. Defendant has argued that these threats should be disregarded as to the danger that he poses to the community through his criminal activities. On the contrary, these actions clearly show the danger Defendant presents to the community because they exemplify the lack of concern that Defendant has for others. On this point, as set forth below, Defendant tasked Lyford, *who was a drug abuser with a violent criminal record*, with getting Defendant's money back – an act which by its very nature raises a significant possibility of violence.

On November 19, 2021, Defendant texted Lyford: "How [victim's name] get my number??? She tricked me into giving her 3 fin nails [30 grams of fentanyl] saying you was

working with her." Defendant followed up: "I need my stuff or she's gonna get hurt bruh." Defendant told Lyford: "Find her for me please I really need my stuff she's in woodland acres with fat old guy." Lyford agreed to look for the woman. Defendant responded: "Yea lmk ASAP."

The next day, November 20, Defendant texted Lyford: "No luck?" Defendant then texted Lyford: "If I don't hear back from her I won't have no other choice but to violate her or her daughter you know how this game works I don't play none of that shit I'll go to jail for mines." During the same text exchange, Defendant texted: "Yea please tell him to take everything dude I'm really on fire I really want to hurt her bro I ain't no punk so I'm fired up about this man …."

On November 23, 2021, Avalo texted Lyford: "… [N]o word on [victim's name]? Really don't want to go to her daughters house but she's leaving me no choice bro." Lyford responded: "No word homie. Her daughter and her daughter's husband are good friends of mine though. [Redacted name] is a grimey bitch who deserves es what she gets and they also agree. I'm have to ask you as a favor to me to [p]lease be patient and get her directly bro. Please." Lyford also stated: "She can only stay down for so long in this little town. I'll go knocking on doors tomorrow make that bitch come to you. Watch." As noted above, Lyford was a drug abuser with a violent criminal history and Defendant had him hunting down the woman who had allegedly stolen drugs from Defendant. Defendant's argument that these actions do not raise a danger to the victim, and possibly others, does not hold water.

The danger presented by Defendant in his criminal activities is further exemplified in an incident involving overdoses caused by Defendant's fentanyl. On September 30, 2021, one of Defendant's co-conspirators in Maine texted: "… That was a batch of brownies u brought! *Had*

*one of my boys go out and one out to lunch on her way just after I saw u yesterday*." The co-conspirator was relaying to Defendant that the strength of Defendant's fentanyl had resulted in one overdose and another victim being "on her way" to an overdose. Defendant responded: "Lol yea ???" The individual replied: "Ya for real *had to narcan after cpr and shit it was crazy*! Then my girl that drives me was the other one she was out of her mind on tour for hours lmao." (emphasis added). Per this communication, the victim of the fentanyl overdose had been given CPR and Naloxone ("Narcan") to treat the potentially fatal overdose. Defendant responded: "Lol." Defendant then texted: "Wasup tho I need new plays [drug deals] … shits been slow buddy." Defendant's response to individuals overdosing and nearly dying was to seek more customers for the same dangerous drug.

## **THE PROPOSED SENTENCE**

There can be no dispute that Defendant has engaged in highly destructive conduct that has placed the public in Massachusetts and Maine at risk. Defendant has done so for his own benefit and the benefit of the Heath Street Gang. The Sentencing Guidelines support a 30-year-sentence. The government agrees with Probation that those are the appropriate Guidelines in this case. However, under the totality of the circumstances, including Defendant's age and his history of incarceration, the government is seeking a lower sentence of fifteen years' incarceration to be followed by three years of supervised release.

The proposed sentence is a long sentence but also a necessary sentence. The murder is the type of ongoing violent crime that destroys neighborhoods in Boston and other cities because of the various consequences that arise from it. Defendant and his gang cohorts recruited a

juvenile boy to commit a heinous and life-altering act – murder.[3] The shooting deprived a family of a loved one and the community of a member forever. The shooting also took an innocent man's life for simply walking in a gang-impacted Boston neighborhood – this type of random violence terrorizes the populace and accelerates the degradation of living conditions in certain neighborhoods. The shooting further perpetuated the ongoing cycle of gang violence that has resulted in gangs constantly seeking to even the score against their gang rivals at any cost and without any regard to the mayhem they leave behind. Thus, this type of crime demands a high penalty to both penalize the offender for the multi-faceted harm he has caused and to deter others from going down the same path.

## CONCLUSION

The Government's proposed sentence of 180 months' incarceration, to be followed by 3 years of supervised release, is an appropriate sentence for all the reasons set forth in 18 U.S.C. 3553.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney States

Date: October 20, 2026

By: */s/ Michael Crowley*
MICHAEL CROWLEY
Assistant U.S. Attorney

[3] The life of the shooter will never be the same because Defendant and the Heath Street Gang recruited a child and turned him into a murderer.

**CERTIFICATE OF SERVICE**

I, Michael Crowley, Assistant United States Attorney, do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael J. Crowley*
MICHAEL J. CROWLEY
Assistant U.S. Attorney